COOLEY LLP
TRAVIS LEBLANC (251097)
(tleblanc@cooley.com)
KRISTINE A. FORDERER (278745)
(kforderer@cooley.com)
ANUPAM DHILLON (324746)
(ADhillon@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

TIANA DEMAS *(pro hac vice forthcoming)*
(tdemas@cooley.com)
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606-1511
Telephone: +1 312-881-6500
Facsimile: +1 312-881-6598

URVASHI MALHOTRA (334466)
(umalhotra@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304
Telephone: +1 650 843 5000
Facsimile: +1 650 849 7400

Attorneys for Defendant
GOOGLE LLC

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER BARULICH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE HOME DEPOT, INC., a Delaware corporation, and GOOGLE LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 2:24-cv-01253-FLA-JC<br><br>**DECLARATION OF KRISTINE FORDERER IN SUPPORT OF GOOGLE LLC'S MOTION TO TRANSFER** |

I, Kristine Forderer, hereby declare as follows:

1.      I am partner at the law firm of Cooley LLP and an attorney of record for Google LLC ("Google") in the above-captioned matter.  I am licensed to practice law in the state of California and am admitted to practice before this Court.

2.      On October 23, 2023, Misael Ambriz filed a class action lawsuit in the U.S. District Court for the Northern District of California ("*Ambriz*"), alleging that Google Cloud's Contact Center Artificial Intelligence ("CCAI") violates California's Invasion of Privacy Act, Cal. Penal Code § 631(a) ("Section 631 (a)"). Cooley LLP, including the undersigned, are also counsel of record for Google in *Ambriz*. Attached as **Exhibit A** is a true and correct copy of the *Ambriz* complaint.

3.      On January 16, 2024, Google moved to dismiss the *Ambriz* complaint for failure to state a claim under Section 631(a). Attached as **Exhibit B** is a true and correct copy of Google's motion to dismiss in *Ambriz*.

4.      On March 19, 2024, Judge Rita Lin held oral argument on Google's motion to dismiss.  As of this filing, Judge Lin has not yet issued an order on Google's motion to dismiss.

5.      Further, as of this filing, Judge Lin has not set a case schedule or held a case management conference in *Ambriz*, nor has any discovery commenced.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 19th day of April 2024 in Oakland, California.

*/s/ Kristine A. Forderer*
Kristine A. Forderer

# Exhibit A

**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ndeckant@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORINA

| | |
|---|---|
| MISAEL AMBRIZ, individually and on behalf of all other persons similarly situated, <br><br>                        Plaintiff, <br><br>       v. <br><br> GOOGLE, LLC, <br><br>                     Defendant. | Case No.: <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Misael Ambriz ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## NATURE OF ACTION

1. Defendant Google, LLC ("Defendant" or "Google") has developed and provides a customer service product called Google Cloud Contact Center AI (hereafter "GCCCAI") as a software-as-a-service.

2. GCCCAI is employed by numerous entities, including Verizon Communications, Inc. ("Verizon"), to monitor channels for voice-based interactions.

3. Verizon contracted with Google and its GCCCAI service to respond to customers who call from California and across the nation call to, among other things, receive support ("Contact Center").

4. By virtue of providing the GCCCAI service, however, Defendant also records, accesses, reads, and learns the contents of conversations between Californians and Verizon customer service representatives. And, crucially, neither Defendant nor Verizon procured the prior consent, express or otherwise, of any person who interacted with Verizon's customer service agents, prior to Defendant recording, accessing, reading, and learning the contents of conversations between Californians and Verizon's customer service representatives.

5. Through its use of GCCCAI, Defendant has failed to comply with the California Invasion of Privacy Act ("CIPA") § 631.

6. Plaintiff brings this action to prevent Defendant from further violating the privacy rights of California residents, and to recover statutory damages for Defendant having recorded, accessed, read, and learned the contents of conversations between Californians and Verizon customer service representatives without procuring prior consent, in contravention of CIPA § 631.

## PARTIES

7. Plaintiff Misael Ambriz resides in Napa County, California and has an intent to remain there, and is therefore a citizen of California. Mr. Ambriz was in California when he called

the Contact Center.

8.　Defendant Google, Inc. ("Google" or "Defendant") is a Delaware limited liability company, with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043.  Google does business throughout California and the entirety of the United States.  Google provides a customer contact and support solution called "Google Cloud Contact Center AI," which is at issue here and described more fully below.

9.　At all relevant times, Verizon contracted with Google and its GCCCAI service.

## JURISDICTION AND VENUE

10.　This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action where there are more than 100 members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one member of the putative Class is a citizen of a state different from Defendant.

11.　This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in California.

12.　Venue is proper in this District pursuant to 28 U.S.C. § 1391 Defendant resides in this District.

## FACTUAL BACKGROUND

### I.　The California Invasion Of Privacy Act

13.　The California Legislature enacted the Invasion of Privacy Act to protect certain privacy rights of California citizens.  The legislature expressly recognized that "the development of new devices and techniques for the purpose of eavesdropping upon private communications … has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."  Cal. Penal Code § 630.

14.　As the California Supreme Court has held in explaining the legislative purpose behind CIPA:

> While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its *simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device.*

---

> As one commentator has noted, such secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements.

*Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985) (emphasis added; internal citations omitted).

15. As part of CIPA, the California Legislature enacted § 631(a), which prohibits any person or entity from (i) "intentionally tap[ping], or mak[ing] any unauthorized connection … with any telegraph or telephone wire," (ii) "willfully and without the consent of all parties to the communication … read[ing], or attempt[ing] to read, or to learn the contents or meaning of any … communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [California]," or (iii) "us[ing], or attempt[ing] to use … any information so obtained."  CIPA § 631(a) also penalizes those who "aid[], agree[] with, employ[], or conspire[] with any person" who conducts the aforementioned wiretapping.

16. Individuals may bring an action against the violator of CIPA § 631 for $5,000 per violation.  Cal. Penal Code § 637.2(a)(1).

**II.     Defendant Violates The California Invasion Of Privacy Act**

17. GCCCAI is a "human-like generative AI powered contact center" that, among other things, "empowers human agents with continuous support during their calls and chats by identifying intent and providing real-time, step-by-step assistance" and "uses natural language processing to identify call drivers and sentiment that helps contact center managers learn about customer interactions to improve call outcomes."[1]

18. When a consumer calls into a GCCCAI-powered contact center, they may first be presented with a virtual agent provided by Google.  Virtual agents are not identified as being provided by Google, and so consumers reasonably believe the virtual agent is provided by the company they are calling (*e.g.*, Verizon).

---

[1] CONTACT CENTER AI, https://cloud.google.com/solutions/contact-center.

19.     Regardless, if a consumer requests to speak with a human agent, the virtual agent transfers the consumer—along with a transcript of the conversation up until that point—to a human agent:[2]



The call gets routed to an agent through the partner telephony

20.     Crucially, once a consumer is routed from the virtual agent to the human agent, they expect the conversation is only between themselves and the human customer service agent.  They do not expect, nor do they have any reason to suspect, that the virtual agent or any sort of third party is listening in on the conversation.  After all, that is the point of being transferred.

21.     And yet, contrary to those expectations, Google is *still listening* even when a call is transferred from a virtual agent to a human agent.  Specifically, a Google "session manager monitors the state of the conversation" with the human agent[3]:

---

[2] HOW DOES GOOGLE CLOUD CONTACT CENTER AI WORK?, https://youtu.be/i8b4pEYIsIM?si=NjkXMwHwCJXOIKyz&t=158.

[3] HOW DOES GOOGLE CLOUD CONTACT CENTER AI WORK?, https://youtu.be/i8b4pEYIsIM?si=NjkXMwHwCJXOIKyz&t=160.



22.     Google, through GCCCAI, does not simply listen in on the conversation between the consumer and the human agent though.  It also "[t]ranscribe[s] calls in real time for agents to reference during the call or for analysis after the call."[4]

23.     In addition, Google, through GCCCAI, "grabs the context of the conversation to suggest articles and real-time, step-by-step guidance" to the agent.[5]  In other words, Google, through GCCCAI, is actively analyzing the real-time contents of conversations between companies like Verizon and their customers.

---

[4] AGENT ASSIST, https://cloud.google.com/agent-assist?hl=en.

[5] HOW DOES GOOGLE CLOUD CONTACT CENTER AI WORK?, https://youtu.be/i8b4pEYIsIM?si=szJ4Bfl9egcT5p1N&t=174.



24. Further, through GCCCAI, Google provides "smart replies" to the agent based on Google's analysis of the real-time contents of the conversations:[6]



<hr />

[6] How Does Google Cloud Contact Center AI Work?, https://youtu.be/i8b4pEYIsIM?si=DTnLsP36i4vO1NLD&t=188.

25.     Since at least July 2020, Verizon has contracted with Google to listen in on conversations through GCCCAI, and for Google to provide at least all of the features mentioned above.

26.     Google profits from its provision of the GCCCAI service.  For instance, Google charges its clients "$0.03 per minute" for "Agent Assist for voice sessions with Summarization and other assist features."[7]

27.     When GCCCAI is used on a telephone conversation, it is not like a tape recorder, or a "tool" used by one party to record the other.  Instead, GCCCAI involves Google – a separate and distinct third-party entity from the parties to the conversation – using GCCCAI to eavesdrop upon and record a conversation to which it is not a party.  This functionality is possible because Google itself is collecting the contents of any conversation, as alleged above.  Google also needs access to the data in order to service customers like Verizon, such as through providing recommendations, analyzing customer intent, and transcribing conversations in real time.

28.     Google has the capability to use the contents of conversations it collects through GCCCAI.  For instance, in its "Service Specific Terms," Google has a section pertaining to "AI/MIL Services," which includes GCCCAI.[8]  In this section, Google states it can use "Customer Data" to "train or fine-tune any AI/ML models" with its clients' permission (but not the end user's permission).[9]  Thus, Google has the capability to use the wiretapped data it collects through GCCCAI to improve its AI/ML models (*i.e.*, to improve the AI-based products and services Google provides).

29.     During consumers' calls with Verizon's support center, Verizon and Google fail to inform consumers, prior to any recording: (i) that a third party, Google, is listening in on consumers' communications with Verizon, (ii) that a third party, Google, is tapping or otherwise making an unauthorized connection with the consumer's telephone conversation using GCCCAI,

---

[7] AGENT ASSIST PRICING, https://cloud.google.com/agent-assist/pricing.

[8] SERVICE SPECIFIC TERMS, https://cloud.google.com/terms/service-terms.

[9] *Id.*

and (iii) that the content of consumers' confidential communications with Verizon are being recorded, collected, intercepted, and analyzed by a third party, Google, using GCCCAI.

30. The GCCCAI service was designed to record and analyze real-time phone conversations. As such, when Google provided the GCCCAI service to Verizon, Google understood and therefore intended to record the communications of Verizon's current and prospective customers.

31. Therefore, Defendant's conduct violates the rights of Californians set forth in CIPA § 631.

### III. Plaintiff's Experience

32. Plaintiff Ambriz has called Verizon's Contact Center several times, including most recently in or about January 2023.

33. In these conversations, Plaintiff reasonably expected his conversations with Verizon to be only between himself and Verizon.

34. During these calls with Verizon, Plaintiff first interacted with a "virtual agent." Plaintiff was not aware, nor did he have any reason to suspect, that the virtual agent was being provided by a third party, Google, rather than Verizon.

35. On these calls, Plaintiff then asked to be transferred from the virtual agent to a human agent. When Plaintiff's call was transferred to the human agent, he reasonably expected the conversation would be only between himself and the Verizon human customer service agent. He did not expect or have any reason to expect that the virtual agent, let alone a virtual agent provided by Google, a third party, was listening in on his conversation.

36. Nonetheless, Google, through GCCCAI, eavesdropped on Plaintiff's entire conversation with the Verizon human customer service agent. Specifically, a Google session manager monitored the conversation between Plaintiff and Verizon, and Google, through GCCCAI, transcribed Plaintiff's conversation in real time, analyzed the context of Plaintiff's conversation with Verizon, and suggested "smart replies" and news articles to the Verizon agent Plaintiff was communicating with.

37.     Through the aforementioned process, Google read and learned, in real time, the contents of Plaintiff's conversation with Verizon.

38.     Neither Verizon nor Google procured Plaintiff's prior consent, express or otherwise, to have Defendant eavesdrop on Plaintiff's conversation with Verizon.  Nor did Plaintiff did not give his prior consent, express or otherwise, to Google or Verizon to allow Defendant to wiretap his communications with Verizon.

39.     Plaintiff has, therefore, had his privacy severely invaded and been exposed to the risks and harmful conditions created by Defendant's violations of CIPA alleged herein.

## CLASS ALLEGATIONS

40.     Plaintiff seeks to represent a class defined as all individuals who, while in the United States, had the contents of their conversations with Verizon read and learned by Defendant using GCCCAI (the "Nationwide Class").

41.     Plaintiff also seeks to represent a subclass defined as all individuals who, while in the State of California, had the contents of their conversations with Verizon read and learned by Defendant using GCCCAI (the "California Subclass").

42.     The Nationwide Class and the California Subclass shall be collectively referred to as the "Class."

43.     The following people are excluded from the Class: (1) any Judge presiding over this action and members of her or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest (including current and former employees, officers, or directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

44.     **Numerosity:** The number of persons within the Class is substantial and believed to amount to thousands, if not millions of persons.  It is, therefore, impractical to join each member of the Class as a named Plaintiff.  Further, the size and relatively modest value of the claims of the

---

individual members of the Class renders joinder impractical.  Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.  Moreover, the Class is ascertainable and identifiable from Defendant's and Verizon's records.

45.     **Commonality and Predominance:** There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, which do not vary between members of the Class, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following:

> (a)     Whether Defendant violated CIPA § 631;
>
> (b)     Whether Defendant sought or obtained prior consent—express or otherwise—from Plaintiff and the Class; and
>
> (c)     Whether Plaintiff and members of the Class are entitled to actual and/or statutory damages for the aforementioned violations.

46.     **Typicality:** The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other members of the Class members, called Verizon's Contact Center and had the content of his communications with Verizon, read, learned, analyzed, and/or examined by Google.

47.     **Adequate Representation:** Plaintiff is an adequate representative of the Class because their interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of members of the Class will be fairly and adequately protected by Plaintiff and his counsel.

48.     **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Class.  Each individual member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial

system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT I
### Violation Of The California Invasion Of Privacy Act,
### Cal. Penal Code § 631(a)

49.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

50.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

51.     CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978).

52.     To establish liability under CIPA § 631(a), a Plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

> *Or*

> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

> *Or*

Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

*Or*

Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

53.     GCCCAI is a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

54.     Google is a separate legal entity that offers "'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Accordingly, Google was a third party to any communication between Plaintiff and members of the Class, on the one hand, and as Verizon, on the other. *Id.* at 521; *see also Javier v. Assurance IQ, LLC*, 2023 WL 114225, at *6 (N.D. Cal. Jan. 5, 2023).

55.     At all relevant times, through GCCCAI, Google intentionally tapped, electrically or otherwise, the lines of telephone communication between Plaintiff and Class Members, on the one hand, and the entities with whom Plaintiff and Class Members were communicating, on the other hand.

56.     At all relevant times, through GCCCAI, Google willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff and putative members of the Class, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

57.     Plaintiff and members of the Class did not consent to any of Defendant's actions discussed above. Nor have Plaintiff or members of the Class consented to Defendant's intentional access, interception, reading, learning, recording, collection, and analysis of Plaintiff's and members of the Class's communications.

58.     Because Defendant is headquartered in California, a CIPA § 631 can be pursued by all consumers who called Verizon, regardless of where the consumer resides. *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2016 WL 3543699, at *6 (S.D. Cal. June 29, 2016) (finding

that non-resident plaintiff had statutory standing under CIPA where recordings by California defendant took place in California); *see also Carrese v. Yes Online Inc.*, 2016 WL 6069198, at *4 (C.D. Cal. Oct. 13, 2016) (same and noting "[c]ourts have declined to read CIPA's legislative intent as a limitation on standing when the statute does not impose any residency requirements"); *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal. 2011) ("A legislative purpose that articulates an interest in protecting those within California is not inconsistent with also allowing non-Californians to pursue claims against California residents.").

59.     The violation of CIPA § 631(a) constitutes an invasion of privacy sufficient to confer Article III standing.

60.     Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members have been injured by the violations of CIPA § 631(a), and each seeks statutory damages of $5,000 for each of Google's violations of CIPA § 631(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)     For an order certifying the Class under Fed. R. Civ. P. 23, naming Plaintiff as the representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b)     For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)     For statutory damages of $5,000 for each violation of CIPA § 631(a);

(e)     For pre- and post-judgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief; and

(g)     For an order awarding Plaintiff and the Class their reasonable attorney's fees and expenses and costs of suit.

1

## <u>DEMAND FOR JURY TRIAL</u>

2

Plaintiff demands a trial by jury for all issues so triable.

3

4

Dated: October 23, 2023

Respectfully submitted,

5

**BURSOR & FISHER, P.A.**

6

By: *   /s/ Neal J. Deckant*

7

Neal J. Deckant

8

Neal J. Deckant (State Bar No. 322946)

9

1990 North California Blvd., Suite 940

Walnut Creek, CA 94596

10

Telephone: (925) 300-4455

Facsimile: (925) 407-2700

11

E-Mail: ndeckant@bursor.com

12

*Attorneys for Plaintiff*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit B

1  COOLEY LLP
   TRAVIS LEBLANC (251097)
2  (tleblanc@cooley.com)
   KRISTINE A. FORDERER (278745)
3  (kforderer@cooley.com)
   ANUPAM DHILLON (324746)
4  (ADhillon@cooley.com)
   3 Embarcadero Center, 20th Floor
5  San Francisco, CA  94111
   Telephone:     +1 415 693 2000
6  Facsimile:     +1 415 693 2222

7  TIANA DEMAS (*pro hac vice*)
   (tdemas@cooley.com)
8  110 N. Wacker Drive, 42nd Floor
   Chicago, IL  60606
9  Telephone:     +1 312 881 6500
   Facsimile:     +1 312 881 6598

10
   URVASHI MALHOTRA (334466)
11 (umalhotra@cooley.com)
   3175 Hanover Street
12 Palo Alto, CA  94304
   Telephone:     +1 650 843 5000
13 Facsimile:     +1 650 849 7400

14
   Attorneys for Defendant
15 Google LLC

16                UNITED STATES DISTRICT COURT

17              NORTHERN DISTRICT OF CALIFORNIA

18                   SAN FRANCISCO DIVISION

19

20 MISAEL AMBRIZ, individually and on behalf    Case No. 3:23-cv-05437-RFL
   of all other persons similarly situated,
21                                               **GOOGLE LLC'S MOTION TO DISMISS
                       Plaintiff,                PLAINTIFF'S COMPLAINT FOR FAILURE TO
22                                               STATE A CLAIM (FED. R. CIV. P. 12(b)(6))**
          v.
23                                               **DATE:  MARCH 19, 2024**
   Google LLC,                                   **TIME: 10:00 A.M.**
24                                               **JUDGE:  HONORABLE RITA F. LIN**
                       Defendant.                **COURTROOM: 15, 18TH FLOOR**
25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND ............................................................................. 2

III.   LEGAL STANDARD ........................................................................................ 4

IV.   THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(6) ...................... 5

     A.     Google is not a "third party" to the communications at issue. ............................... 5

     B.     Plaintiff does not plausibly allege the involvement of a "person." ........................ 9

     C.     Plaintiff does not allege eavesdropping on a "telegraph or telephone wire." ....... 10

     D.     Plaintiff does not plausibly allege that "contents" of his communications were intercepted by Google "while . . . in transit." ............................................... 11

     E.     Plaintiff consented to having his calls monitored and recorded. ......................... 12

     F.     CIPA's exemption for telephone companies bars Plaintiff's claim. .................... 13

V.    CONCLUSION ................................................................................................ 15

1

**TABLE OF AUTHORITIES**

2

Page

3

**Cases**

4

5
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................. 4, 12

6
*Balletto v. American Honda Motor Co., Inc.*,
  No. 23-cv-1017-JSW, 2023 WL 7026931 (N.D. Cal. Oct. 24, 2023) ....................... 9

7

8
*Bartholomew v. YouTube, LLC*,
  17 Cal. App. 5th 1217 (2017) ................................................................. 8

9

10
*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................. 4

11
*In re Google Assistant Privacy Litigation*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020) .............................................. 10, 11

12

13
*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021) ................................................. 6–8

14

15
*Javier v. Assurance IQ, LLC*,
  No. 20-cv-2860-CRB, 2023 WL 3933070 (N.D. Cal. June 9, 2023) ............. 13

16
*Javier v. Assurance IQ, LLC*,
  649 F. Supp. 3d 891 (N.D. Cal. 2023) ................................................. 8, 13

17

18
*Johnson v. Blue Nile, Inc.*,
  No. 20-cv-8183-LB, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) ................. 7

19

20
*Kearney v. Salomon Smith Barney, Inc.*,
  39 Cal. 4th 95 (2006) ........................................................................... 12

21
*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) .............................................................. 3, 4

22

23
*Licea v. American Eagle Outfitters, Inc.*,
  659 F. Supp. 3d. 1072 (2023) .......................................................... 10, 11

24

25
*Lofton v. Verizon Wireless (VAW) LLC*,
  586 F. App'x 420 (9th Cir. 2014) ........................................................ 13

26
*Mastel v. Miniclip SA*,
  549 F. Supp. 3d 1129 (E.D. Cal. 2021) ............................................ 10, 11

27

28
*Matera v. Google Inc.*,
  No. 15-cv-4062-LHK, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ................. 12

**TABLE OF AUTHORITIES**
(continued)

Page

*Mireskandari v. Mail*,
  No. CV 12-29743 MMM (FFMx), 2013 WL 12129559 (C.D. Cal. July 30,
  2013) .................................................................................................................... 11

*Negro v. Superior Court*,
  230 Cal. App. 4th 879 (2014)................................................................................ 12

*Newirth by and through Newirth v. Aegis Senior Communities, LLC*,
  931 F.3d 935 (9th Cir. 2019)................................................................................... 5

*In re Northpoint Communications Group, Inc., Securities Litigation &*
  *Consolidated Cases*,
  221 F. Supp. 2d 1090 (N.D. Cal. 2002) ................................................................. 5

*People v. Mahoney*,
  47 Cal. App. 3d 699 (1975)................................................................................... 13

*People v. Wilson*,
  17 Cal. App. 3d 598 (1971)................................................................................... 11

*Ribas v. Clark*,
  38 Cal. 3d 355 (1985) ..................................................................................... 6, 14

*Rogers v. Ulrich*,
  52 Cal. App. 3d 894 (1975).................................................................................. 6, 7

*Saleh v. Nike, Inc.*,
  562 F. Supp. 3d 503 (C.D. Cal. 2021).................................................................. 8, 9

*Steckman v. Hart Brewing, Inc.*,
  143 F.3d 1293 (9th Cir. 1998)................................................................................. 5

*Swarts v. Home Depot*,
  No. 23-cv-995-JST, 2023 WL 5615453 (N.D. Cal. Aug. 30, 2023)........................ 9

*Tavernetti v. Superior Court*,
  22 Cal. 3d 187 (1978) .................................................................................... 9, 14

*Telesaurus VPC, LLC v. Power*,
  623 F.3d 998 (9th Cir. 2010)................................................................................. 12

*United States v. Goldstein*,
  532 F.2d 1305 (9th Cir. 1976)......................................................................... 13, 14

*Valenzuela v. Keurig Green Mountain, Inc.*,
  No. 22-cv-9042-JSC, 2023 WL 3707181 (N.D. Cal. May 24, 2023) ..................... 11

COOLEY LLP
ATTORNEYS AT LAW
WASHINGTON, DC

iii

**GOOGLE'S MOTION TO DISMISS**
**CASE NO. 3:23-CV-05437**

**TABLE OF AUTHORITIES**
(continued)

*Warden v. Kahn*,
    99 Cal. App. 3d 805 (1979)..............................................................................6

*Weisbuch v. County of Los Angeles*,
    119 F.3d 778 (9th Cir. 1997)......................................................................5, 14

*Williams v. DDR Media, LLC*,
    No. 22-cv-03789-SI, 2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) ..............7

*Williams v. What If Holdings, LLC*,
    No. C 22-3780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022)........6, 7, 8

*Yockey v. Salesforce, Inc.*,
    No. 22-cv-9067-JST, 2023 WL 5519323 (N.D. Cal. Aug. 25, 2023)................9

**Statutes**

California Civil Procedure Code § 2295 ...........................................................14

California Penal Code
    § 631(a) ............................................................................................. *passim*
    § 631(b)......................................................................................................13, 14
    § 631(b)(1) .......................................................................................................14
    § 631(c) ............................................................................................................14
    § 632(b).............................................................................................................10
    § 638(c)(2)–(3) ................................................................................................14

California Public Utilities Code § 234 ..............................................................14

Federal Rule of Civil Procedure 12(b)(6) .....................................................1, 5

COOLEY LLP
ATTORNEYS AT LAW
WASHINGTON, DC

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE, on Tuesday, March 19, 2024 at 10:00 am, or as soon thereafter as this Motion may be heard, before the Honorable Rita F. Lin of the United States District Court, Northern District of California at the San Francisco Courthouse, Courtroom 15, 18th Floor, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Google LLC ("Google") will and hereby does move the Court to dismiss Plaintiff's Complaint.

Google requests that the Court dismiss the entire Complaint because it fails to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). This is the issue to be decided. The Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings, any oral argument, and any other materials properly presented with this Motion.

**MEMORANDUM AND POINTS OF AUTHORITIES**

## I. INTRODUCTION

Plaintiff's Complaint should be dismissed because Google cannot be liable under the California Invasion of Privacy Act ("CIPA") for merely providing a software program—the modern equivalent of a tape recorder—that Verizon Communication Inc. ("Verizon") uses for customer service calls. The Complaint's wiretapping and eavesdropping theories under Section 631(a) of CIPA ("Section 631(a)") are untenable. Plaintiff Misael Ambriz ("Plaintiff") alleges that during his calls with Verizon customer service, Verizon used software provided by Google to assist with the calls. But California law makes abundantly clear that supplying such technology does not make the supplier itself a party to the conversation. That is all that allegedly happened here: Plaintiff allegedly called Verizon's customer service center, interacted first with a computerized "virtual agent" and then spoke to a live Verizon customer service agent. Plaintiff never claims, nor could he, that he was unaware his call was being monitored and recorded. Instead, Plaintiff alleges that Verizon did not inform him that the monitoring and recording was achieved through Google software: the Cloud Contact Center ("CCAI"). Based on these allegations, Plaintiff has brought a putative class action against Google for allegedly violating Section 631(a), by wiretapping and

eavesdropping on conversations between Verizon and callers to Verizon's customer service line. The Court should reject this legal theory and dismiss the case for numerous reasons.

**First**, and most fundamentally, Plaintiff cannot state a claim because he does not plausibly allege that Google eavesdropped on—or was a "third party" to—his communications with Verizon. The law is clear that parties to communications (like Verizon) can use tools (like software provided by other entities) to record or analyze their own conversations with others (like Plaintiff), consistent with CIPA. The use of such tools does not make their provider (Google) an unannounced third-party to the call. No violation occurred here.

**Second**, Plaintiff fails to sufficiently plead additional required elements of his CIPA claim. Plaintiff does not allege that a "person" intercepted his call. CCAI is not a "person" under the statute, and Plaintiff never claims that Google or any Google employee eavesdropped on his calls. The Complaint also fails to plead that Plaintiff called Verizon customer service using a "telegraph or telephone wire" (as opposed to an internet-based smartphone). Nor does Plaintiff allege that his communications were intercepted "while … in transit."

**Third**, the Court should dismiss the Complaint because Plaintiff consented to having his calls monitored and recorded. He does not allege that Verizon failed to inform him that his calls were being monitored and recorded, or that he was unaware of this when he decided to continue his calls. Instead, he attempts to artfully plead around his consent by claiming he was not informed that *Google's* software did the recording.

**Finally**, Plaintiff's claim is barred because CIPA specifically *exempts* telephone companies (like Verizon) and their "agents" (like Google) from the statute if the contemporaneous call recording is for the purpose of providing the telephone company's services. Verizon's provision of direct customer service falls within this exception.

Plaintiff cannot cure these deficiencies through amendment, and the Court should dismiss the Complaint with prejudice.

## II. FACTUAL BACKGROUND

Plaintiff alleges he is a California resident who called Verizon's customer service center multiple times, most recently in January 2023. ECF No. 1, Compl. ¶¶3, 25, 32. On these calls,

Plaintiff first interacted with a "virtual agent"—an AI-based software program—and then he asked to be (and was) transferred to a human agent. *Id.* ¶35. Plaintiff claims he "reasonably expected" that once transferred to a human agent, his "conversation would be only between himself and the Verizon human customer service agent," and not the "virtual agent." *Id.* ¶35. However, he alleges that during the call, the virtual agent transcribed his conversation and "suggested 'smart replies' and news articles to the Verizon agent." *Id.* ¶36. Plaintiff does not describe the substance of his conversation with the virtual agent or the live customer service representative, nor does he explain why he expected that a recorded customer service call would remain private. *Id. passim*. Plaintiff alleges that "[n]either Verizon nor Google procured Plaintiff's prior consent, express or otherwise, to have [Google] eavesdrop on Plaintiff's conversation with Verizon," nor did Plaintiff expressly or impliedly consent to "allow [Google] to wiretap his communications with Verizon." *Id.*¶38.

Google's CCAI is an AI-powered call center offered to businesses that "'empowers human agents with continuous support during their calls and chats by identifying intent and providing real-time, step-by-step assistance' and 'uses natural language processing to identify call drivers and sentiment that helps contact center managers learn about customer interactions to improve call outcomes.'" Compl. ¶17. CCAI operates both as a virtual agent and as support for live (human) agent interactions if they become necessary. *Id.* ¶¶20–21. Customers first speak with a "virtual agent" but may be transferred to a real person if necessary or requested; to streamline the service, the human agent will receive a transcript of the virtual agent interactions. *Id.* ¶¶18–19. While the Complaint alleges, based on a promotional video, that a "Google 'session manager monitors the state of the conversation' with the human agent," the same video makes clear that the "session manager" is computer software and not a person.[1] *Id.* Plaintiff further alleges based on the same

---

[1]  How Does Google Cloud Contact Center AI Work?, https://www.youtube.com/watch?v=i8b4pEYIsIM (last visited Jan. 16, 2024). The Court can consider this video and the other documents cited as the basis of Plaintiff's allegations, Compl. n.1–n.9, because they are incorporated by reference. *See, e.g., Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (incorporation by reference "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom-their claims," and its application is appropriate where "the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim"); *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1058 n.10 (9th Cir. 2014) ("Once a document is deemed incorporated by reference, the entire document is assumed to be true for

video that during the human agent interactions, CCAI "'[t]ranscribe[s] calls in real time for agents to reference during the call or for analysis after the call,'" "'grabs the context of the conversation to suggest articles and real-time, step-by-step guidance' to the agent," and suggests "smart replies to the agent." *Id.* ¶¶22–24 (alterations in original).

Plaintiff generally alleges that Google's terms allow it to use "'Customer Data' to 'train or fine-tune any AI/ML models.'" Compl. ¶28. However, the incorporated Service Specific Terms ("SS Terms") are clear that Google cannot use "Customer Data" to train AI/ML models unless Verizon—the "Customer"—allows it to do so, which is not alleged here. *Id.* at n.8.

Based on this predicate, Plaintiff alleges that Google violated Section 631(a) by wiretapping and eavesdropping on his customer service calls with Verizon without his consent. Compl. ¶¶52, 57. Although he lists all four prongs of CIPA in the Complaint, *id.* ¶52, Plaintiff only asserts a claim under the first and second prongs, *id.* ¶¶55–56. He alleges that Google, through CCAI, (1) "[i]ntentionally taps, or makes an[] unauthorized connection" on a "telegraph or telephone wire" and (2) "read[s] or attempt[s] to read or learn the contents or meaning of any … communication while … in transit." *Id.* ¶¶52, 55–56.

Plaintiff seeks to represent a nationwide class of "all individuals who, while in the United States, had the contents of their conversations with Verizon read and learned by" Google using CCAI, and a similarly defined subclass of individuals who were in California when the alleged conduct occurred. Compl. ¶¶40–41. He seeks $5,000 in statutory damages for each time Google allegedly violated CIPA. *Id.* ¶60.

## III.   LEGAL STANDARD

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) where the plaintiff has failed to state a cognizable legal theory or allege sufficient facts establishing a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Khoja v.*

---

purposes of a motion to dismiss, and both parties—and the Court—are free to refer to any of its contents." (citation omitted)).

*Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted). If a plaintiff alleges facts showing that she is not entitled to relief, it is well established that "a plaintiff may plead herself out of court." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (citation omitted). Finally, "[t]he court need not accept as true statements in a complaint contradicted by supporting documentation incorporated therein." *In re Northpoint Comm'ns. Grp., Inc., Secs. Litig. & Consol. Cases*, 221 F. Supp. 2d 1090, 1098 (N.D. Cal. 2002) (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998)).[2]

## IV. THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(6)

### A. Google is not a "third party" to the communications at issue.

Under Section 631(a), CCAI—a software tool—does not qualify as a third-party participant to a communication. The Court should dismiss the case on this ground alone.

Plaintiff pursues only the first two prongs of Section 631(a), both of which prohibit "any person who, by means of any machine, instrument, or contrivance"

> (1) intentionally taps, or makes any unauthorized connection … with any telegraph or telephone wire, line, cable or instrument; or
>
> (2) willfully and without consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state.

Cal. Pen. Code § 631(a). As to the first prong, Plaintiff alleges that Google, through CCAI, "intentionally tapped . . . the lines of telephone communications between" himself and Verizon. Compl. ¶55. For the second prong, Plaintiff alleges that Google, through CCAI, "willfully and without the consent of all parties to the communication, . . . read or attempted to read or learn the contents or meaning of electronic communications of [Plaintiff and the putative class], while the electronic communications were in transit or passing over any wire . . . within California." *Id.* ¶56.

---

[2] As noted in the Joint Case Management Statement, ECF No. 25 at 5, if the case is not dismissed, Google may move to compel this case to arbitration should discovery reveal the existence of an enforceable arbitration agreement between Plaintiff and Verizon, as to which Google is a third-party beneficiary.  Google therefore reserves, and does not waive, its right to compel arbitration at a later point. *See Newirth by and through Newirth v. Aegis Senior Comms., LLC*, 931 F.3d 935, 940 (9th Cir. 2019) (waiver of compelling arbitration requires "the intentional relinquishment or abandonment of a known right").

Both theories fail.

"Only a third-party can listen to a conversation secretly," and a party to a communication can record it without eavesdropping. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021); *see also Williams v. What If Holdings, LLC*, No. C 22-3780 WHA, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) ("Parties to a conversation cannot eavesdrop on their own conversation[.]"); *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) (Section 631(a) "has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation"); *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) (no CIPA violation where a party to a communication surreptitiously used a tape recorder to record the conversation).

This well-established rule comes from two California decisions: *Rogers v. Ulrich*, 52 Cal. App. 3d at 899, and *Ribas v. Clark*, 38 Cal. 3d 355 (1985). In *Rogers*, the defendant installed a tape recorder in his telephone, recorded a conversation with the plaintiff, and then played that conversation for a third party. 52 Cal. App. 3d at 897–98. The court held that a party to a conversation can record it without eavesdropping: "It is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation." *Id.* at 899. In other words, the tape recorder is not a third party. In *Ribas*, the California Supreme Court applied this principle to hold that a third party that listened in on a call between a husband and wife, unbeknownst to the husband, had "eavesdropped" for purposes of CIPA. The *Ribas* court distinguished "the secondhand repetition of the contents of a conversation" in *Rogers* from the "simultaneous dissemination to an unannounced second auditor" in *Ribas*, because the latter "denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements." 38 Cal. 3d at 360–61.

Courts in this district have dismissed Section 631(a) claims involving technology like CCAI, analogizing it to the tape recorder in *Rogers*, not the friend in *Ribas*. In *Graham*, Judge Beeler held that the plaintiff failed to state a Section 631(a) claim against Noom, a weight-loss web application, and FullStory, the provider of "session replay" technology that Noom used "to record what visitors are doing on the Noom website, such as their keystrokes, mouse clicks, and page

scrolling, thereby allowing a full picture of the user's website interactions." *Graham*, 533 F. Supp. 3d at 827. The Court noted that FullStory provided a service solely for the benefit of its clients (*i.e.*, Noom), and the plaintiff did not allege "that FullStory intercepted and used the data itself." *Id.* at 832. Rather, FullStory was "a vendor that provides a software service that captures its clients' data, hosts it on FullStory's servers, and allows the clients to analyze their data." *Id.* As such, FullStory was "an extension of Noom" that "provides a tool – like the tape recorder in *Rogers* – that allows Noom to record and analyze its own data in aid of Noom's business." *Id.* The Court held that FullStory was "not a third-party eavesdropper" and dismissed the Section 631(a) claim. *Id.* at 833. Multiple courts have followed *Graham's* reasoning to dismiss Section 631(a) claims involving similar technologies. *See, e.g.*, *Williams v. DDR Media, LLC*, No. 22-cv-03789-SI, 2023 WL 5352896, at *1 (N.D. Cal. Aug. 18, 2023) (dismissing Section 631(a) claim against provider of keystroke recording software because it was "more akin to a tape recorder vendor than an eavesdropper"); *What If Holdings*, 2022 WL 17869275, at *4 (explaining that the software "functioned as a recorder, and not as an eavesdropper"); *Johnson v. Blue Nile, Inc.*, No. 20-cv-8183-LB, 2021 WL 1312771, at *2 (N.D. Cal. Apr. 8, 2021) (dismissing Section 631(a) claim because the plaintiff "does not plausibly plead that FullStory eavesdropped on her communications with Blue Nile … only that FullStory is Blue Nile's vendor for software services").

As in the above cases, Plaintiff alleges that Google provides CCAI—a software service— to Verizon. Compl. ¶1. Plaintiff claims he interacted directly with CCAI's "virtual agent" at the outset of his calls. *Id.* ¶34. Then, he asked to be (and was) transferred to a Verizon customer service agent. *Id.* ¶35. Crucially, Plaintiff does *not* claim that he was not informed at the beginning of the call that it was being monitored and recorded. Instead, Plaintiff alleges he "was not aware" that Google, not Verizon, provided the "virtual agent" that was making the recording. *Id.* ¶34. This is no different from claiming that a party who records a call violates Section 631(a) by not disclosing the manufacturer of the tape recorder. CIPA does not stretch that far. *See, e.g.*, *Rogers*, 52 Cal. App. 3d at 899; *DDR Media*, 2023 WL 5352896, at *4–5. And once Plaintiff's call was transferred from the virtual agent to the live representative, Plaintiff concedes that CCAI merely assists the live Verizon agents (who are indisputably parties to the calls) in responding to customers, including "by

identifying intent and providing real-time, step-by-step assistance" and by "help[ing] contact center managers learn about customer interactions to improve calls." Compl. ¶17. CCAI is plainly "an extension" of Verizon because it simply "provides a tool" for Verizon's business. *See Graham*, 533 F. Supp. 3d at 832.

Plaintiff's allegation that Google "can" use "Customer Data" to "fine tune" CCAI does not change the analysis. The incorporated SS Terms state that "Google **will not** use Customer Data to train or fine-tune any AI/ML models without Customer's prior permission or instruction." Compl. ¶28, n.8. Plaintiff does not allege that Verizon permitted Google to use Verizon's data for such training. And even if Verizon had done so, the SS Terms clearly set forth Google and the Customer's roles with respect to "Customer Personal Data." Google is merely a "processor," and the Customer (Verizon) "instructs Google to process Customer Personal Data in accordance with the Applicable Agreement (including this Addendum) and applicable law" for purposes dictated by the Customer, *not* Google. *See* CLOUD DATA PROCESSING ADDENDUM (CUSTOMERS).[3] Like the service providers in *Graham* and its progeny, Google does not have the authority to use the data it receives from Verizon for its own purposes. *See, e.g.*, *Graham*, 533 F. Supp. 3d at 832 ("Unlike NaviStone's and Facebook's aggregation of data for resale, there are no allegations here that FullStory intercepted and used the data itself."); *What If Holdings*, 2022 WL 17869275, at *3 ("[A] key distinction is whether or not the alleged third-party software provider aggregates or otherwise processes the recorded information, which might suggest that the software vendor independently 'uses' the gathered data in some way.").

Google's inability to use the data for its own purposes distinguishes the allegations here from those in *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023) ("*Javier I*"), and *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). *See* Compl. ¶54 (citing *Javier I* and *Saleh* for the proposition that offering "software-as-a-service and not merely a passive device" violates Section 631(a)). But, *Javier I* recognized that a software vendor would not be an

---

[3] https://cloud.google.com/terms/data-processing-addendum (last visited Jan. 16, 2024). The Cloud Data Processing Addendum is incorporated and hyperlinked in the SS Terms. *See* Compl. n.8; *Bartholomew v. YouTube, LLC*, 17 Cal. App. 5th 1217, 1229 n.7 (2017) (explaining hyperlink in terms of service may be incorporated and "used to create an enforceable contract").

"unannounced second auditor" if it "does not have the capability to use its record of the interaction for any other purpose (just as a tape recorder has no independent capability to divulge the recording for any other purpose but that of the owner)" or if "the ubiquity of services like [those of the vendor] on the internet effectively renders it party to the 'firsthand dissemination' of [the plaintiff's] information to [the defendant]." 649 F. Supp. 3d at 900; *see also Saleh*, 562 F. Supp. 3d at 521 (recognizing that "FullStory did not become a 'party' to the communication simply because it was providing recording and transmission services for Nike"); *Swarts v. Home Depot*, No. 23-cv-995-JST, 2023 WL 5615453, at *1, *7 (N.D. Cal. Aug. 30, 2023) (Home Depot's use of LivePerson, "a company that provides software to 'analyz[e] the data and provid[e] Home Depot [with] customer data metrics related to each conversation," did not violate CIPA because plaintiff did not allege that "LivePerson, or any other third party, can use the information obtained for any other purpose besides relaying it to Home Depot"); *Yockey v. Salesforce, Inc.*, No. 22-cv-9067-JST, 2023 WL 5519323, at *5 (N.D. Cal. Aug. 25, 2023) (Salesforce did not violate CIPA by providing a chat feature where the allegations did "not support a reasonable inference that Salesforce has the capability to use these communications for any purpose other than furnishing them to" its direct customer); *Balletto v. Am. Honda Motor Co., Inc.*, No. 23-cv-1017-JSW, 2023 WL 7026931, at *1–3 (N.D. Cal. Oct. 24, 2023) (same).

Here, the very document Plaintiff incorporated into the Complaint makes clear that Google *cannot* use the call data for its own purposes and is not an unannounced third party. The Court should dismiss the Complaint on this ground alone.

**B.      Plaintiff does not plausibly allege the involvement of a "person."**

The Complaint also fails to allege that any "person" wiretapped or eavesdropped on Plaintiff's customer service calls–yet another reason for dismissal under  Section 631(a). CCAI is software, not a person, and both prongs of Section 631(a) require that a "person" do the wiretapping or eavesdropping. *See Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192 (1978) (telephone company lineman's disclosure to law enforcement of drug-related phone conversation he heard while repairing line malfunction violated Section 631(a) and warranted suppression of evidence in support of search warrant); Cal. Pen. Code § 631(a) (limiting violations to those committed by "any

person").

California Penal Code § 632(b) defines "person" as "an individual, business, association, partnership, corporation, limited liability company, or other legal entity." CCAI is not a "person" under this definition; it is software. And the Complaint pointedly does not allege that any Google employee or other Google "person" "intentionally tapped," "made an unauthorized connection," or eavesdropped on any real-time Verizon customer service call. To the contrary, the Complaint repeatedly alleges that it is only "through GCCCAI"[4] that "Google . . . eavesdropped on Plaintiff's entire conversation with the Verizon human customer service agent." Compl. ¶36; *see also id*. ¶¶22–23, 25. While Plaintiff references a "session manager" that allegedly "monitors the state of the conversation with the human agent," *id.* ¶21, n.3, the video Plaintiff cites makes clear that the "session manager" is not a person; it is part of the CCAI software. *Id.* (citing HOW DOES GOOGLE CLOUD CONTACT CENTER AI WORK at 2:34 ("A session manager monitors the state of the conversation. *It* sends the request to a partner-installed agent desktop. At this point, the *human agent* will see transcripts of the conversation with the virtual agent…")). The Court should dismiss the Complaint in its entirety because Plaintiff fails to allege involvement by any Google "person."

**C.** **Plaintiff does not allege eavesdropping on a "telegraph or telephone wire."**

Plaintiff also cannot state a claim under Section 631(a)'s first clause because he does not allege that Google wiretapped a "telegraph or telephone wire[.]" Cal. Pen. Code § 631(a). The Complaint does not allege that Plaintiff used a landline to contact Verizon, and given the ubiquity of smartphones, the Court cannot infer this. It is well-established that a smartphone (*i.e.*, a computer) does not satisfy the "telegraph or telephone wire" requirement. *See, e.g.*, *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d. 1072, 1080 (C.D. Cal. 2023) (though they "contain the word 'phone' in their name, and have the capability of performing telephonic functions, [iPhones] are, in reality, small computers" (quoting *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1135 (E.D. Cal. 2021)); *see also In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 826 (N.D. Cal. 2020) (Section 631(a) claim under first clause must be dismissed if allegations do not show that plaintiff called "using telegraph or telephone wires").

---

[4] The Complaint refers to CCAI as "Google Cloud Contact Center AI" or "GCCCAI." Compl. ¶1.

Plaintiff does not allege that he used a "telegraph or telephone wire" to contact Verizon on any occasion. He alleges only that he "called" Verizon "several times." Compl. ¶32. This does not support the inference that Plaintiff used a landline. The Court should dismiss Plaintiff's Section 631(a) wiretapping claim for failure to plead this required element.

**D.      Plaintiff does not plausibly allege that "contents" of his communications were intercepted by Google "while . . . in transit."**

Plaintiff's claim under Section 631(a)'s second clause fails for the additional reason that he does not plausibly allege that Google intercepted a communication "in transit." To state a claim under this prong, Plaintiff must plead that Google "reads, or attempts to read, a communication that is '*in transit* or *passing* over any wire, line or cable, *or is being sent from, or received* at any place within' California." *Mastel*, 549 F. Supp. 3d at 1136 (quoting *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 826 (emphasis in original)).

Here, Plaintiff does not plausibly allege that his communications were intercepted "while in transit." *See, e.g.*, *Mireskandari v. Mail*, No. CV 12-29743 MMM (FFMx), 2013 WL 12129559, at *10 n.44 (C.D. Cal. July 30, 2013) (finding plaintiff failed to "plausibly [] plead that NSC intercepted any electronic communication while it was in transit; at most, he alleges the illegal disclosure of data NSC held in storage"); *People v. Wilson*, 17 Cal. App. 3d 598, 603 (1971) (concluding no CIPA violation because information "was obtained after and not 'while' [communications] were in transit or passing 'over' the telephone wire"). As one court explained, "the crucial question … is whether [the plaintiff] has plausibly alleged that [the defendant] read one of his communications while it was still in transit, i.e., before it reached its intended recipient." *Mastel*, 549 F. Supp. 3d at 1137. "Bare allegations of recording and creating transcripts do not specifically allege that Plaintiffs' messages were intercepted while in transit." *Licea*, 659 F. Supp. 3d at 1085. Instead, a party must allege specific facts supporting real-time interception. *Valenzuela v. Keurig Green Mt., Inc.*, No. 22-cv-9042-JSC, 2023 WL 3707181, at *5 (N.D. Cal. May 24, 2023) (holding it was "impossible to infer from the complaint" that communications were intercepted "while . . . in transit" where plaintiff alleged that third-party "code" was embedded in defendant's website for a chat feature).

The Complaint's allegations do not meet the "in transit" requirement. The sole references to "in transit" are when Plaintiff recites the elements of Section 631(a), *see* Compl. ¶¶15, 52, 56, which is insufficient. *See Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (instructing courts to "disregard threadbare recitals of the elements of a cause of action" (quoting *Iqbal*, 556 U.S. at 678)). Even under Plaintiff's theory that the information is somehow shared with Google pursuant to the SS Terms, there are no facts in the Complaint supporting the idea that this occurs while the communications at issue are "in transit." The Court should dismiss Plaintiff's Section 631(a) claim brought under the second clause for failure to allege an interception "in transit."

**E.       Plaintiff consented to having his calls monitored and recorded.**

Plaintiff's entire claim also fails because Section 631(a) requires the prohibited conduct to be "without consent," and prior consent is an absolute defense to a CIPA claim. "Under CIPA, a consent defense is established when both parties—the sender and the recipient of the communication—consent to the alleged interception." *Matera v. Google Inc.*, No. 15-cv-4062-LHK, 2016 WL 5339806, at *7 (N.D. Cal. Sept. 23, 2016); *see Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 118 (2006) (CIPA prohibits eavesdropping "without first informing all parties to the conversation that the conversation is being recorded"); *Negro v. Superior Ct.*, 230 Cal. App. 4th 879, 892 (2014) ("In the wiretapping context, a finding of implied-in-fact consent requires 'circumstances indicating that the [party] knowingly agreed to the surveillance.'" (citation omitted)).

As noted above, Plaintiff does not allege that Verizon failed to inform him, as is standard for any customer service call, that his calls would be monitored and recorded generally. Compl. ¶¶32–35.[5] Instead, Plaintiff merely claims that Verizon did not specify that *Google* provided the

---

[5] Plaintiff cannot amend to allege that he was unaware his call would be monitored and recorded at all, because all incoming callers to Verizon's customer contact center (1-833-VERIZON) are informed of this. The current message says:

> Welcome to Verizon. I'm the Verizon Assistant. Para Español, oprima el nueve. Your call may be monitored or recorded by Verizon and our vendors for quality assurance and security, to train our employees and systems, and to personalize your experience. Say or enter a phone number or account number associated with the question you are calling

1    software that Verizon used to record and transcribe customer service calls. *Id.* ¶38 ("Neither

2    Verizon nor Google procured Plaintiff's prior consent, express or otherwise, to have Defendant

3    eavesdrop on Plaintiff's conversations with Verizon.").

4        Plaintiff cannot plead around the fact of notice generally, and the Complaint is clear that he

5    knowingly stayed on the call (and, in fact, made multiple calls). This is grounds for dismissal. *See*

6    *Javier v. Assurance IQ, LLC*, No. 20-cv-2860-CRB, 2023 WL 3933070, at *2–3 (N.D. Cal. June 9,

7    2023) (dismissing case brought by Plaintiff's counsel on statue-of-limitations grounds because the

8    plaintiff was on notice of the allegedly illegal monitoring the first time he visited the website due

9    to the company's privacy policy); *see also Javier I*, 649 F. Supp. 3d at 902 n.6 (taking judicial

10   notice of privacy policy on prior motion to dismiss making the same argument). Nothing else is

11   required to obtain Plaintiff's consent, and his CIPA claim should be dismissed.

12       **F.    CIPA's exemption for telephone companies bars Plaintiff's claim.**

13       Finally, the Court should dismiss the Complaint because the alleged conduct falls squarely

14   within Section 631(b)'s exemption for telephone companies and their agents. Section 631(a) does

15   not apply where "[a]ny … telephone company" is "engaged in the business of providing

16   communications services and facilities," including any of its "agents," as long as the conduct is

17   "for the purpose of construction, maintenance, conduct or operation of the services and facilities of

18   the … telephone company." Cal. Pen. Code § 631(b)(1); *see United States v. Goldstein*, 532 F.2d

19   1305, 1314 (9th Cir. 1976) (holding telephone company's investigation into fraud, by tapping a

20   line, complied with CIPA because "the conduct of the phone company's business requires it to

21   detect and prevent toll fraud" (quoting *People v. Mahoney*, 47 Cal. App. 3d 699, 716 n.4 (1975))).

22   Here, Plaintiff alleges that Google, via CCAI, is an agent that helps Verizon provide customer

23   support—a "service" of a "telephone company."

24       ***First***, at all relevant times, Google was an "agent" of a "telephone company" with respect

25   _____

26               about. To become a new customer, say 'New Customer,' or say, 'I don't
                 have one.'

27   (last accessed January 16, 2024). *See Lofton v. Verizon Wireless (VAW) LLC*, 586 F. App'x 420,

28   421–22 (9th Cir. 2014) (denying motion for preliminary injunction in putative CIPA class action
     because Verizon "has revised its written policy to require its debt collectors to disclose on every
     outgoing call that the call is being recorded").

to its provision of CCAI. Verizon is a telephone company under CIPA, *see Cal.* Pen. Code § 631(c), because it is a "corporation … owning, controlling, operating, or managing any telephone line for compensation within this state," Pub. Util. § 234, and/or provides commercial telephone services using "cellular radiotelephone[s]," Cal. Pen. Code § 638(c)(2)–(3). *See* Compl. ¶3. Moreover, Google, as alleged in the Complaint, was an "agent" of Verizon at all relevant times. *See* Cal. Civ. Pro. Code § 2295 ("An agent is *one who represents another*, called the principal, *in dealings with third persons*." (emphasis added)). Here, Plaintiff alleges that Verizon "contracted" with Google to use CCAI "to respond to customers who … call to, among other things, receive support" for Verizon's services, products, and other offerings. Compl. ¶¶3, 9, 25. Plaintiff further alleges that CCAI interacts with customers as a "virtual agent" and supports Verizon's live customer service agents. Thus, Google, via CCAI, was an agent of Verizon (a telephone company) under Section 631(b).

**Second**, CCAI is used by Verizon to maintain, conduct, or operate Verizon's services and facilities. *See* Cal. Pen. Code § 631(b)(1). The Complaint alleges that people call Verizon customer service to "receive support," Compl. ¶3, which "support" is necessarily for Verizon's "services," *see Cal.* Pen. Code § 631(b)(1). The Complaint also claims that Google, via CCAI, assists Verizon's customer support representatives by "empower[ing] human agents with continuous support during their calls and chats by identifying intent and providing real-time, step-by-step assistance" and "help[ing] contact center managers learn about customer interactions to improve call outcomes." Compl. ¶17. Because Plaintiff's own allegations establish that CCAI is used to advance Verizon's business and services, the conduct at issue is exempt from CIPA.[6] *See Goldstein*, 532 F.2d at 1314 (fraud prevention is part of phone company's business); *Tavernetti*, 22 Cal. 3d at 189 (repair lineman did not violate CIPA by eavesdropping while fixing a phone line, although his subsequent disclosure of that communication to law enforcement was not exempt); *see also Weisbuch*, 119 F.3d at 783 n.1 ("A plaintiff may plead herself out of court.").

---

[6] In *Ribas v. Clark*, the California Supreme Court rejected an argument on demurrer about the applicability of a different CIPA exemption. 38 Cal. 3d at 362. *Ribas* is distinguishable because the facts necessary to show that the exemption applied were not apparent from the face of the complaint. Here, the Complaint's allegations establish that the exemption applies.

## V.    CONCLUSION

For the reasons discussed herein, the Court should dismiss the Complaint in its entirety.

Dated: January 16, 2024                              COOLEY LLP


By: /s/ Travis LeBlanc

Travis LeBlanc
Tiana Demas
Kristine Forderer
Anupam Dhillon
Urvashi Malhotra

Attorneys for Defendant
Google LLC